UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

JIMMY KING and RENEE KING,    )
    )
    Plaintiffs,    )    Civil No. 6:15-cv-00172-GFVT
    )
v.    )
    )    **MEMORANDUM OPINION**
MILTON STORM, individually and in his    )    **&**
official capacity as LAUREL COUNTY    )    **ORDER**
DEPUTY SHERIFF; LAUREL COUNTY    )
SHERIFF'S OFFICE; and LAUREL    )
COUNTY, KENTUCKY,    )
    )
    Defendants.    )
    )

***  ***  ***  ***

This matter is before the Court upon the Motion for Summary Judgment [R. 21] filed by

Defendants. Milton Storm arrested Defendants on September 11, 2014 for Trespass in the Third

Degree pursuant to KRS 511.080(2). Plaintiffs allege wrongful arrest; excessive use of force;

false arrest and imprisonment; malicious prosecution; failure to train, supervise, and monitor;

vicarious liability on the part of Laurel County Sheriff's Office; vicarious liability on the part of

Laurel County, Kentucky; and punitive damages. Having reviewed the record, the Court

DENIES in part and GRANTS in part the Defendants' request for summary judgment.

**I**

**A**

On September 11, 2014, Deputy Milton Storm responded to a 911 call reporting a

burglary in progress at 1108 Lark Lane, Corbin, Kentucky. [R. 21 at 1.] He drove past the

address and saw individuals moving around in the house through open curtains. [*Id.*] He then

went to meet the victim, Dora King, a few houses away. [*Id.*] After meeting with Dora, Deputy

Storm returned to the house in question and observed individuals moving around the house again. [*Id*.] He also saw that the handle and lock had been broken off a door near the garage and a vehicle outside full of various items. [*Id*.]

Plaintiffs explain they were in the house because Terry King asked them to go clean up the house because Dora King, who had lived there before, had left the house in "shambles." [R. 23-39 at 44.] Plaintiff Jimmy King testified, and a neighbor corroborated, that Terry King was present with Jimmy King when he entered the house. [R. 23 at 5.] Plaintiff Jimmy King thought that the house was abandoned and no one was living there because the grass was about 18 inches deep. [R. 23-38 at 9.] Additionally, Terry King told Plaintiff Jimmy King that he had paid to evict Dora King from the house. [*Id*. at 13.] Terry King gave Jimmy King keys to the house, but the keys would not work, so Terry King advised Jimmy to make entry into the residence without damaging the property. [R. 23 at 5.] After entering the residence at Terry King's request, Jimmy called his wife Renee to join him at the property to clean up rotting and expired food and other garbage. [*Id*. at 5.]

Deputy Storm entered the residence and encountered Plaintiffs Jimmy and Renee King, along with other individuals. [R. 21 at 1; R. 23-40 at 32.] Renee alleges that she was not in the house when Deputy Storm arrived, but on a sun porch, which Plaintiff Jimmy corroborated. [R. 23-39 at 47; R. 23-38 at 16.] Deputy Storm ordered the Plaintiffs to stop what they were doing and the Plaintiffs complied. [R. 21 at 2.] Deputy Storm admitted that the Plaintiffs were in no way attempting to conceal their location and they fully complied with his instructions while on the property. [R. 23 at 6.] The Plaintiffs informed Deputy Storm that they had permission to enter the residence from Terry King and they called him to come to the residence. [R. 21 at 2.] When Terry King arrived, he showed Deputy Storm documentation that he had filed an eviction

notice on Dora King.  [*Id*. at 3.]

According to Defendants, there was never any question that the residence was in Dora King's possession and Dora King indicated to Deputy Storm that she wanted the Plaintiffs arrested.  [*Id*. at 3.]  Plaintiffs allege that the property is owned jointly by Imogene King (now deceased) and Terry King, and that a landlord-tenant dispute has never been the issue at hand. [R. 23 at 4.]

Through discussions, Deputy Storm realized that this dispute involved some family conflict issues.  [R. 21 at 3.]  Deputy Storm had dispatch run Plaintiffs' information to see if there were any active warrants for them and it was revealed that Jimmy King had no warrants and had no arrests whatsoever on his record.  [R. 23 at 6.]  Deputy Storm made the decision that the situation would not resolve itself if he were to leave all parties at the residence and that something more serious might occur later, resulting in another 911 call.  [R. 21 at 3.]  Deputy Storm also referenced the fact that Dora King was very adamant that the Plaintiffs be arrested. [R. 23 at 6.]  Deputy Storm called his sergeant, Greg Poynter to discuss whether to arrest the Plaintiffs and was directed to do so.  [R. 21 at 3.]  He charged the Plaintiffs with criminal trespass with the intention to bring a burglary charge before a grand jury.  [*Id*.]

Renee went to Terry King's car when he arrived to avoid some of the conflict. According to Plaintiffs, when Deputy Storm arrested her, he pulled her out of the car and "grabbed [her] arm and wrenched her arm behind her back to handcuff her, which caused Renee to cry out in pain."  [R. 23 at 6; R. 23-38 at 25.]  Renee testified that she said to Deputy Storm, "[Y]ou can't do that, I've had open-heart surgery, you're hurting me, you're hurting me . . ."  [R. 23-38 at 27.]  Renee further testified that when Deputy Storm took her to his cruiser, he took off her handcuffs from behind and put her handcuffs in front before he put her in the back of the

cruiser.  [R. 23-38 at 28.]  At that time, Renee told her husband, "Jim, my arms are hurting . . .

and these things are hurting me, you know, my hand's turning blue.  You know, I'm hurting."

[R. 28.]  Deputy Storm testified he did not have contact with Renee while she was in the car and

that he did not pull her out of the car.  [R. 23-40 at 62.]  Deputy Storm also denies that he

handcuffed Renee behind her back, but testified that he handcuffed her hands in front.  [*Id*. at

71.]

The Plaintiffs were taken to the police station and Renee told the officers there, "I'm

hurting, you know, can you take these [handcuffs] off of me?," and an officer there agreed to

loosen the handcuffs.  [R. 23-28 at 28.]  Renee testified that the handcuffs were "cutting

into [her] wrist."  [*Id*. at 28.]  Renee was unable to give a fingerprint because she couldn't roll

her hand, so she told the jailer that Deputy Storm had hurt her arm.  [R. 23-39 at 29.]  The

Plaintiffs were released the following day at 5 p.m. after being bonded out by Terry King and

were arraigned on 3rd Degree Criminal Trespassing charges pursuant to KRS 511.080 on

September 12, 2014.  [R. 21 at 3.]  On November 4, 2014, prosecutors dismissed all charges

against the Plaintiffs.

After being released from jail, Renee called her family physician, Dr. Combs, who

referred her to Dr. Alan Oster.  [R. 23-39 at 234]  Dr. Oster's records document that Renee

presented with "left should pain" due to "another person grab[bing] her arm and [moving it]

backwards causing severe pain.  [R. 23-30 at 1.]  Dr. Alan Oster of Orthopedic Associates

diagnosed Renee King with a "labral tear of the left shoulder and supraspinatus full-thickness

tendon tear."  [R. 23 at 7.]  He indicated that she "will likely need surgical treatment."  [R. 23-31

at 1.]  Dr. Ronald Dubin of Kentucky Orthopedic Clinic confirmed Renee King's diagnosis and

said that her injuries were "consistent with the injury which occurred in 2014."  [R. 23-33 at 2.]

Dr. Dubin said that Renee would possibly need an additional operation, to exceed "$30,000" in future medical expenses and will have a "20% permanent partial impairment to the body as a whole." [*Id*. at 2.]

Deputy Storm testified that he continued his investigation of the crime the next day, on September 12, 2014. [R. 23-40 at 68.] He met with Dora King, who documented what was missing from the house, and he met with two neighbors who saw Plaintiffs in the house the previous day. [*Id*.]

Plaintiffs filed their Verified Complaint in Laurel Circuit Court on September 8, 2015, and filed their Notice of Removal to United States District Court on September 29, 2015 [R. 21 at 4.] Defendants moved for summary judgment, dismissing the Plaintiffs' claims with prejudice on October 7, 2016. [R. 21.]

**B**

**1**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and

identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

## 2

Detective Storm has invoked the doctrine of qualified immunity for each of the claims under 42 U.S.C § 1983 below. The analysis here will be incorporated into each count as a defense. When invoked, "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*,

555 U.S. 223, 231 (2009).

In evaluating claims of qualified immunity, courts generally apply a two-step analysis. First, the court asks if the "officer's conduct violated a constitutional right" when the facts are "[t]aken in a light most favorable" to the Plaintiffs. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the violated right at issue was "clearly established." *Id*. For a right to be clearly established, it is important that "state of the law at the time of the action . . . gave respondents fair warning that their alleged treatment of the plaintiff was unconstitutional." *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (internal brackets omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," but "both [steps] must be answered in the affirmative for the plaintiff's claim to proceed." *Pearson*, 555 U.S. at 236; *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Finally, once a defendant has raised the defense, "the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation 'that every reasonable official would have understood that what he [was] doing violate[d] that right .'" *Thomas v. Plummer*, 489 F. App'x 116, 119 (6th Cir.2012).

## II

### A

#### 1

Plaintiffs, in Count 2 of their Complaint [R. 1-1], bring this action against Defendant Deputy Storm under 42 U.S.C § 1983, alleging that he violated their Fourth Amendment right to be free of excessive force during their arrests. Defendant Storm contends that Plaintiffs cannot

maintain a 42 U.S.C. § 1983 claim against him because he is shielded by qualified immunity. This Court holds that there is a genuine dispute as to material facts that Deputy Storm violated Plaintiff Renee King's Fourth Amendment right to be free of excessive force during her arrest and that Deputy Storm is not shielded by qualified immunity to an action under 42 U.S.C. § 1983. However, this Court finds that Jimmy King has not offered any evidence that he was a victim of excessive force at the hands of Deputy Storm. Summary judgment will be partially entered on Count 2 in favor of the Defendants.

The Sixth Circuit has "consistently held" that "the Fourth Amendment prohibits unduly tight or excessively forceful handcuffing in the course of an arrest." *Bayne*, 799 at 610; *see also Kostrzewa v. City of Troy*, 247 F.3d 633 (stating that "the right to be free from excessive force, including 'excessively forceful handcuffing,' is a clearly established right for purposes of the qualified immunity analysis."). Further, "[t]he extent of case law in this Circuit suffices to put a reasonable officer on notice that excessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment." *Baynes*, 799 F.3d at 614. The court applies an "objective reasonableness" standard when evaluating whether an officer has "exerted excessive force during the court of seizure" and should assess the reasonableness of the officer's conduct "on the scene, rather than with the 20/20 vision of hindsight." *Id*. In analyzing whether an officer was reasonable or not, "[c]ourts should pay particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (internal citations omitted). An officer has "the right to use some degree of physical coercion" and "[n]ot every push or shove . . . violates the Fourth Amendment." *Id*. To survive summary judgment, the plaintiff must "offer

sufficient evidence to create a genuine issue of material fact that: (1) [] she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Baynes*, 799 F.3d at 608; *see also Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009).

Turning to the case at hand, with facts construed in favor of the nonmoving party, a reasonable jury could find that Deputy Storm, in handcuffing Renee King behind the back, violated a clearly established constitutional right to be free from excessive force according to the Fourth Amendment of the United States Constitution. Analyzing the facts in favor of the Plaintiffs, Deputy Storm pulled Renee out of the car she was sitting in on September 11, 2014, causing her to scream in pain and causing significant long-term injuries to her arm. [R. 23 at 6; *see* R. 23-39; R. 23-40.]

A reasonable jury could find Deputy Storm's use of force was unreasonable for an officer at the scene. Using the analysis model in *Kostrzewa,* 247 F.3d at 639, both Deputy Storm and the Plaintiffs admit that the severity of the crime at issue was minor (a violation not punishable by time in jail), the Plaintiffs were fully cooperative throughout Deputy Storm's time at the residence, and the Plaintiffs did not actively resist arrest or attempt to evade arrest by flight. [*See* R. 23 at 6.] Though Deputy Storm and Renee King disagree as to exact sequence of events that resulted in Renee exiting the car before being handcuffed, summary judgment analysis requires that the facts be construed in favor of the Plaintiff, and Renee's testimony corroborates that a reasonable officer would not have used excessive force as Deputy Storm used on Renee.

Turning to the three elements in *Baynes*, 799 F.3d at 608, Renee King could prove all three elements. She complained the handcuffs were too tight, the officer ignored those complaints, and she experienced some physical injury. According to Plaintiffs, when Deputy

Storm arrested Renee King, he pulled her out of the car and "grabbed [her] arm and wrenched her arm behind her back to handcuff her, which caused Renee to cry out in pain." [R. 23 at 6; R. 23-38 at 25.] Renee testified that she said to Deputy Storm, "[Y]ou can't do that, I've had open-heart surgery, you're hurting me, you're hurting me . . ." [R. 23-38 at 27.] Renee presented evidence that Deputy Storm did not remedy the painful handcuffs because when Plaintiffs were taken to the police station, the handcuffs were still painful and she told the officers there, "I'm hurting, you know, can you take these [handcuffs] off of me?," and an officer there agreed to loosen the handcuffs. [R. 23-28 at 28.] Finally, Renee presented evidence from Dr. Oster and Dr. Dubin that she suffers from should injuries that are consistent with her account that Deputy Storm pulled her from the car. [*see* R. 23-30, R. 23-31, R. 23-33.]

Because Deputy Storm was on adequate notice that excessive force while handcuffing is a violation of the Fourth Amendment right to be free from excessive force, he is not shielded by qualified immunity. Renee has presented sufficient evidence to meet her evidentiary burden and genuine issues of material fact exist as to what happened on September 11, 2014. Therefore, summary judgment on Count 2, violation of 42 U.S.C § 1983 for excessive use of force against Renee King will be denied.

**2**

Turning to the second Defendant, Jimmy King did not present any evidence of excessive force against him by Deputy Storm. Therefore, summary judgment on Count 2, violation of 42 U.S.C § 1983 for excessive use of force against Jimmy King will be granted in favor of the Defendants.

## B

## 1

In Count 1 of their Complaint [R. 1-1], Plaintiffs allege they were wrongfully arrested pursuant to § 1983. Also, in Count 3 of their Complaint [*Id.*], Plaintiffs allege that they were falsely arrested and incarcerated. Since Plaintiffs did not clarify in Count 3 whether they are proceeding on a state or federal law claim of false arrest, the state law claim of false arrest and incarceration pursuant to Count 3 will be addressed in the following section. Both wrongful arrest pursuant to § 1983 and false arrest that leads to incarceration are analyzed with the same test, so they will be considered here together. This Court finds that Deputy Storm had probable cause to arrest Plaintiffs and, therefore, summary judgment will be granted in favor of Defendants on § 1983 wrongful arrest and false arrest that leads to incarceration

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause . . ." U.S. Const. amend. IV. To claim protection under the Fourth Amendment, the Plaintiffs must "prove that the arresting officer lacked probable cause to arrest [them]." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014); *see also Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). To determine if the officer had probable cause to effectuate an arrest, the court looks to "whether the arresting officer's actions were objectively reasonable," at the scene of the incident. *Ruble v. Escola*, 898 F. Supp. 2d 956, 970 (N.D. Ohio 2012).

For qualified immunity analysis purposes, "state law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 215 (6th Cir. 2011). The Plaintiffs were charged with KRS 511.080 Criminal Trespass in the third degree, which is a violation. Ky.

Rev. Stat. Ann. § 511.080 (West). "A peace offer may make an arrest . . . without a warrant when a violation of . . . 511.080 . . . has been committed in his [] presence." Ky. Rev. Stat. Ann. § 431.005 (West).

Here, Deputy Storm was acting as a reasonable officer when he arrested Plaintiffs. Deputy Storm came to the house and observed at least Jimmy King in the house and Renee King on the property and in the house. [R. 21-1 at 2.] Plaintiffs did not present Deputy Storm with evidence that they were allowed to be on the property, but presented a court document indicating a court hearing "later that month regarding an eviction notice filed by Terry King against Dora King." [*Id.*] No one argued about who actually owned the property and it was acknowledged that Dora was the tenant at the time. [*Id.* at 3.] Because Deputy Storm knew Dora King was the tenant and Dora King was on the property saying she had not allowed the Plaintiffs into her house, Deputy Storm concluded that Plaintiffs had violated KRS 511.080 and, even though Plaintiffs had no criminal history, he was statutorily authorized to arrest Plaintiffs pursuant to KRS 431.005. Plaintiffs explain the detailed history of the property, including conveyances, estates, and joint ownerships [*id.*], but this Court does not need to examine the actual ownership of the property to determine if Deputy Storm had probable cause to arrest Plaintiffs. [*See* R. 23 at 4.] It is unreasonable to expect that Deputy Storm should have performed a records check to determine the owner of the property before arresting the Plaintiffs in any situation, but especially when no one at the property was disputing who was the tenant of the property. Deputy Storm was acting as a reasonable officer and arrested the Plaintiffs, which was statutorily authorized, whether they were actually trespassers or not.

Further, and in the alternative, Deputy Storm is protected by qualified immunity because, though the conduct at question was a right that was clearly established (violation of Fourth

Amendment rights), Deputy Storm did nothing to violate such rights, as explained above. *See Saucier*, 533 at 201.

Deputy Storm was acting as a reasonable officer while arresting Plaintiffs. A claim of false arrest pursuant to § 1983 cannot be maintained and summary judgment is granted in favor of Defendants.

**2**

Count 3 of Plaintiffs' complaint alleges false arrest and imprisonment. Though the elements for false arrest and false imprisonment are different at the state level than the federal level, each element has already been discussed in the previous section and that analysis is incorporated here. *See infra* Section 2.B.1. Because Deputy Storm acted reasonably to arrest Plaintiffs, summary judgment will be granted in favor of Defendants as to Plaintiff's state law claims of false arrest and imprisonment.

In Kentucky state law, false arrest and false imprisonment are not distinguished since there can be no imprisonment without arrest by a peace officer. *Lexington-Fayette Urban Cty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. Ct. App. 1977). To succeed on a false arrest claim, the plaintiffs must show that the arresting police officer did not have "reasonable grounds to believe" that a crime was being committed and used more force than necessary to effectuate an arrest. *Lexington-Fayette Urban Cty. Gov't v. Middleton*, 555 S.W.2d 613, 617 (Ky. Ct. App. 1977). False imprisonment requires the detention of the plaintiff and the unlawfulness of such detention. *Mullins v. Carver*, No. 2015-CA-000655-MR, 2016 WL 4934593, at *17 (Ky. Ct. App. Sept. 16, 2016) (citing *Southern Ry. Co. in Ky v. Shirley*, 121 Ky. 863, 90 S.W. 597, 599 (1906).). The second element of false imprisonment, the unlawfulness of the detention, is answered by the analysis required of a claim of false arrest.

According to Kentucky state law, both elements must be met for a false arrest claim to stand. Plaintiffs would have had to prove that Deputy Storm had no reasonable grounds to believe that a crime was being committed and used more force than necessary to arrest them. Although it is possible Deputy Storm used more force than necessary, as discussed above, he did have reasonable grounds to arrest Plaintiffs. *See infra* Section 2.B.1. Since his actions were reasonable, the elements required for a false have not been met. Kentucky's standards for false imprisonment requires the unlawfulness of such detention and no such unlawfulness has been substantiated, Plaintiffs' false imprisonment claim fails as well.

As stated above, since Deputy Storm violated no right, qualified immunity does protect Deputy Storm in addition to the above analysis or in the alternative. For reasons previously stated and since Deputy Storm acted reasonable in his arrest of Plaintiffs, summary judgment is granted in favor of Defendants on Count 3 of Plaintiff's complaint.

## C

### 1

In Count 4 of their Complaint [R. 1-1], Plaintiffs allege that they were maliciously prosecuted by Deputy Storm. Again, it is not clear if the Plaintiffs intended to bring a state or federal claim against Deputy Storm, so both will be considered, first the federal claim. This Court holds that no genuine issue of material fact exists on Plaintiff's federal malicious prosecution claim, so summary judgment will be granted in favor of the Defendants.

The Sixth Circuit recognizes "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Robertson v. Lucas*, 753 F.3d 606, 615–16 (6th Cir. 2014). Freedom from malicious prosecution claim is a "clearly established" right under the

Fourth Amendment. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). To succeed on a malicious prosecution claim, a plaintiff must prove there is a genuine issue of material fact as to each of the following elements:

> (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor.**"**

*France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016); *see, e.g. Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).

Because each element of this test must be met, it is sufficient for this Court to demonstrate that only one of element of the malicious prosecution claim was not met. This Court finds that there is no genuine issue of material fact as to the second element of a malicious prosecution claim, "there was no probable cause for the prosecution," and the Plaintiff's claim for malicious prosecution fails.

"A malicious prosecution claim under § 1983 fails 'when there was probable cause to prosecute.'" *France v. Lucas*, 836 F.3d 612, 626 (6th Cir. 2016) (quoting *Stricker v. Twp. Of Cambridge*,j 710 F.3d 350, 365 (6th Cir. 2013). Probable cause is assessed from the perspective of a reasonable officer at the scene of the crime and not with the "20/20 vision of hindsight." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020 (2014).

Deputy Storm arrested Plaintiffs because he saw them in Dora King's house and had proof that Dora King was the current tenant of the house, a crime defined in KRS 511.080 as Criminal Trespass in the third degree. Ky. Rev. Stat. Ann. § 431.005 allowed Deputy Storm to effectuate arrest based on seeing the Plaintiffs in the house. Deputy Storm acted reasonably

when he arrested Plaintiffs rather than perform a records search to determine the rightful property owner.  *See infra* Section 2.B.1.

No constitutional violation occurred and Deputy Storm is protected by qualified immunity in addition or in the alternative.  Accordingly, and for the reasons stated above, Deputy Storm had probable cause to participate in the prosecution of Plaintiffs and a malicious prosecution claim fails as a result.  Summary judgment is granted in favor of Defendants as to the malicious prosecution claim.

**2**

Turning to the state law malicious prosecution claim, according to Kentucky law,

> [T]here are six basic elements necessary to . . . an action for malicious prosecution. . . .They are: (i) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings; (ii) by, or at the instance of, the [Defendant], (iii) the termination of such proceedings in [Plaintiffs'] favor; (iv) malice in the institution of such proceeding; (v) lack of probable cause for the proceeding, and (vi) damage as a result of the proceeding."

*Smith v. Peyman*, 93 F. Supp. 3d 738, 750 (E.D. Ky. 2015) (internal quotations and citations omitted).

"Malice may be active, hostile, and demonstrable, in the sense of the defendant's desire to inflict harm or suffering on the plaintiff, but may also be presumed from a 'want of probable case.'"  *Smith*, 93 F. Supp. 3d at 750.

The analysis from the previous section is incorporated here, in that Kentucky law requires a "lack of probable cause" in the malicious prosecution of a plaintiff.  *Smith v. Peyman*, 93 F. Supp. 3d 738, 750 (E.D. Ky. 2015).  Here, as previously discussed, Deputy Storm did have probable cause for the arrest.  Because Deputy Storm had probable cause to arrest Plaintiffs, each

element of the Kentucky malicious prosecution claim is not met and summary judgment is appropriate.

Since no constitutional violation occurred, Deputy Storm is also protected by qualified immunity. Though the Kentucky rule for malicious prosecution varies somewhat from the federal rule described above, both fail because Deputy Storm did have probable cause to arrest Plaintiffs. Summary judgment is granted in favor of Defendants as to the federal and state malicious prosecution claims.

## D

In Count 5 of their Complaint [R. 1-1], Plaintiffs allege that Laurel County Sheriff's Office failed to properly train, supervised, and monitor Deputy Storm, which resulted in him using excessive force against them on September 11, 2014. Defense and Plaintiffs have conceded that this count should be dismissed.

Discovery after the Complaint revealed adequate information that Deputy Storm had been trained adequately. Plaintiffs conceded that Summary Judgment is appropriate on this Count in light of the evidence they now have. [R. 23 at 13.] Therefore, Summary Judgment is granted on behalf of the Defendants on Count 5, failure to train, supervise, or monitor.

## E

In Counts 6 and 7 of their Complaint [R. 1-1], Plaintiffs allege vicarious liability on behalf of the Laurel County Sheriff's Office and vicarious liability on behalf of Laurel County, Kentucky. This Court finds that the Laurel County Sheriff's Office and Laurel County, Kentucky, are not vicariously liable for the actions of Deputy Storm and partial summary judgment will be granted in their favor.

"The Supreme Court has held that municipalities can be sued under 42 U.S.C. § 1983 not

on the basis of *respondeat superior,* but only when there is a direct causal link between a

municipal policy or custom and the alleged constitutional deprivation."  *Kostrzewa v. City of

Troy*, 247 F.3d 633, 644 (6th Cir. 2001); *see, e.g., Monell v. Dep't of Soc. Servs. of City of N.Y.*,

436 U.S. 658, 691 (1978); *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 856 (6th Cir.

2016); *Brown v. Chapman*, No. 15-3506, 2016 WL 683260 (6th Cir. Feb. 19, 2016).

"[G]overnmental actors [and municipalities] 'are responsible only for their own illegal acts. They

are not vicariously liable under § 1983 for their employees' actions.'"  *Shadrick v. Hopkins Cty.,

Ky.*, 805 F.3d 724, 751 (6th Cir. 2015).  In order for a Governmental actor or municipality to be

held "liable under § 1983," there must be proof that, "through its deliberate conduct, it was the

moving force behind the injury alleged."  *Shadrick*, 805 F.3d at 751 (internal quotations

omitted).   In other words, a Governmental actor or municipality can only be found liable if they

have "(1) consciously adopted a specific 'policy' of perpetrating unconstitutional conduct despite

(2) having actual or constructive notice that the policy will cause employees to violate

constitutional rights, such that [the Governmental actors and municipalities] can be considered

'deliberately indifferent' to the fact that its employees will spread constitutional harm."

*Shadrick*, 805 F.3d at 751.

Plaintiffs Jimmy and Renee King have presented their complaints against Laurel County

Sheriff's Office and Laurel County, Kentucky, as *respondeat superior* claims, simply

maintaining that they are vicariously liable for the "acts and/or omissions of [their] agent,

[Deputy Storm], . . . and the damages resulting therefrom."  [R. 1-1 at 7.]  The Plaintiffs have

presented no evidence of any type of policy that would lead to the violation of anyone's

constitutional rights and have not presented any evidence that either the Laurel County Sheriff's Office or Laurel County, Kentucky, have committed any type of illegal act themselves.

Therefore, Laurel County Sheriff's Office and Laurel County, Kentucky will not be held vicariously liable for the actions of Deputy Storm acting in his official capacity. Accordingly, Summary Judgment will be entered on Counts 6 and 7 in favor of the Defendants Laurel County Sheriff's Office and Laurel County, Kentucky.

**F**

Defendants claim a sovereign immunity defense according to *Doe v. Patton*, 381 F. Supp. 2d 595, 602 (E.D. Ky. 2005). Since the Counts against Laurel County, Kentucky, and Laurel County Sheriff's Office were already dismissed, the sovereign immunity defense will be addressed only as applicable to Deputy Storm. This Court finds Deputy Storm will not escape liability on a sovereign immunity defense.

Though "County governments in Kentucky are cloaked in sovereign immunity, . . . [s]tates cannot abrogate § 1983 liability in federal courts simply by extending sovereign immunity through state common law." *Doe v. Patton*, 381 F. Supp. 2d 595, 602 (E.D. Ky. 2005). A sheriff would not normally "share the States' sovereign immunity" unless "state law *required* him to take the actions he took." *Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 784 (6th Cir. 2016) (internal quotations omitted). A sheriff who has "no discretion" but is simply fulfilling a "statutory obligation he was bound to enforce," will be protected under his state's sovereign immunity as acting as an arm of the state. *Id*. (internal quotations omitted). "[T]he essential question is the degree of discretion possessed by the official ... implementing the contested policy." *Crabbs v. Scott*, 786 F.3d 426, 430 (6th Cir. 2015) (quoting *Cady v. Arenac Cnty.,* 574 F.3d 334, 343 (6th Cir.2009)).

The statute under which Deputy Storm took authority to arrest the Plaintiffs describes the discretion afforded by the officer to arrest those charged with KRS 511.080 Criminal Trespass in the third degree. The statute states that "[a] peace offer *may* make an arrest . . . without a warrant when a violation of . . . 511.080 . . . has been committed in his [] presence." Ky. Rev. Stat. Ann. § 431.005 (West) (emphasis added). Unlike *Jones*, 838 F.3d, Deputy Storm was under no direction or mandate from the state to arrest the Plaintiffs. As in *Crabbs*, 786 F.3d, he had the discretion to arrest the Plaintiffs or not. He chose the arrest he Plaintiffs pursuant to Ky. Rev. Stat. Ann. § 431.005 (West), but the language of the statute makes clear he was under no obligation to do so.

Accordingly, Defendants will not be protected by sovereign immunity. It is not a defense to violations of § 1983.

**G**

In Count 8 of their complaint, Plaintiffs assert that Defendants' actions were intentional and malicious, "committed with a willful and callous disregard for Plaintiffs' rights," and they should we awarded punitive damages. [R. 1-1 at 9.] While these allegations may be true, punitive damages should be requested in a prayer for relief rather than a cause of action. Therefore, summary judgment is not appropriate, but the punitive damages cause of action will be reconstrued as a prayer for relief.

Defendants assert in their Motion for Summary Judgment that punitive damages is not a separate cause of action and they are correct. [R. 21-1 at 16.] "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). This is not a

separate cause of action, however, but rather a special remedy.  *See Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 548 (E.D. Ky. 2001).

Since one § 1983 violation remains after a summary judgment analysis, Plaintiffs will be permitted to seek punitive damages at trial.  Count 8 alleging punitive damages is, therefore, reconstrued as a prayer for relief.

## III

In conclusion, Plaintiffs have presented sufficient evidence to create an issue of material fact as to one of their claims.  As a result, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendant's Motion for Summary Judgment [**R. 21**] is **GRANTED** in part and **DENIED** accordingly:

1.	The Defendants' motion for Summary Judgment [R. 21] is **GRANTED IN PART**.  The following claims are **DISMISSED** from the lawsuit:

   a.  The § 1983 claim of excessive force against Jimmy King;

   b.  The § 1983 claim of malicious prosecution against Jimmy and Renee King;

   c.  The false arrest and false imprisonment claims against Jimmy and Renee King;

   d.  The malicious prosecution claim against Jimmy and Renee King;

   e.  The lack of supervision, training, and monitoring claim against Laurel County Sheriff's Office and Laurel County, Kentucky; and

   f.  Both vicarious liability claims against Laurel County Sheriff's Department and Laurel

   County, Kentucky;

2.	The Defendants' motion for Summary Judgment [R. 21] is **DENIED IN PART**.  The following claim will proceed:

    a.  The § 1983 claim of excessive force against Renee King.

This the 17th day of May, 2017.

Gregory F. Van Tatenhove
United States District Judge